1              **U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

2

3  **JEFFREY M. WILLETT,**                    ) Case No.: _____
                                            )
4                    **Plaintiff,**          ) CIVIL RIGHTS COMPLAINT (*Bivens*)
                                            )
5  vs.                                      ) JURY TRIAL DEMANDED
                                            )
6  **MICHAEL R. POMPEO,**                   )
   Personally and in his official          )
7  capacity as Secretary,                   )
   U.S. DEPARTMENT OF STATE,                )
8  2201 C Street NW                         )
   Washington, DC 20520                     )
9                                           )
   **JONATHAN M. ROLBIN,**                  )
10 Personally and in his official          )
   capacity as Director,                    )
11 **CHRISTINE I. McLEAN,**                 )
   Personally and in her official           )
12 capacity as Acting Director,            )
   LAW ENFORCEMENT LIAISON DIVISION         )
13 U.S. Department of State                 )
   CA/PPT/S/L/LE                            )
14 44132 Mercure Circle                     )
   PO Box 1227                              )
15 Sterling, VA 20166-1227                  )
                                            )
16 **STEPHEN B. DIETZ, III**                )
   Personally and in his official          )
17 capacity as Executive Director,         )
   BUREAU OF DIPLOMATIC SECURITY,           )
18 U.S. Department of State                 )
   2201 C Street NW                         )
19 Washington, DC 20522-2006                )
                                            )
20 **MICHELE THOREN BOND**                  )
   Personally and in her official           )
21 capacity as Acting Assistant           )
   Secretary,                               )
22 **JOHN D. WILCOCK**                      )
   Personally and in his official          )
23 capacity as Acting Consul General,      )
   BUREAU OF CONSULAR AFFAIRS,              )
24 U.S. Department of State                 )
   2201 C Street NW                         )
25 Washington, DC 20520                     )
                                            )
26 **PATRICK P. O'CARROLL, JR.**            )
   Personally and in his official          )
27 capacity as Inspector General,          )
   **GEORGE PENN**                          )
28 Personally and in his official          )

| | |
|---|---|
| capacity as Deputy Chief Counsel, | ) |
| **DOUGLAS ROLOFF** | ) |
| Personally and in his official | ) |
| capacity as Special Agent, | ) |
| **ADRIENNE C. MESSER** | ) |
| Personally and in her official | ) |
| capacity as Special Agent, | ) |
| **MATTHEW DEUCHLER** | ) |
| Personally and in his official | ) |
| capacity as Special Agent, | ) |
| U.S. SOCIAL SECURITY ADMINISTRATION | ) |
| OFFICE OF THE INSPECTOR GENERAL | ) |
| 6401 Security Boulevard | ) |
| Gwynn Oak, Maryland 21207 | ) |
| | ) |
| **NANCY BERRYHILL** | ) |
| Personally and in her official | ) |
| capacity as ACTING COMMISSIONER OF | ) |
| SOCIAL SECURITY ADMINSITRATION | ) |
| 6401 Security Boulevard | ) |
| Gwynn Oak, Maryland 21207 | ) |
| | ) |
| **JOHN DOE 1-10,** inclusive, | ) |
| | ) |
|                         **Defendants** | ) |
| | ) |
| **ALSO SERVE:** | ) |
| U.S. Attorney for the District of | ) |
| Columbia | ) |
| Civil Process Clerk | ) |
| 555 Fourth Street NW | ) |
| Washington, DC 20530 | ) |
| | ) |
| U.S. Attorney General | ) |
| c/o Justice Management | ) |
| Division | ) |
| 950 Pennsylvania Avenue NW | ) |
| Rm 1111 | ) |
| Washington, DC 20530 | ) |
| | ) |
| U.S Department of State | ) |
| Executive Office of the Legal | ) |
| Advisor | ) |
| 2201 C Street NW | ) |
| Washington, DC 20520-6310 | ) |
| | ) |
| Social Security Administration | ) |
| Office of the General Counsel | ) |
| 6401 Security Boulevard | ) |
| Gwynn Oak, Maryland 21207 | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |

1

2

_____

3

## PRELIMINARY STATEMENT

Plaintiff moves the Court for entry of judgment in his favor against the U.S. Department of State (hereafter, "DOS"), Michael R. Pompeo; Law Enforcement Liaison Division (hereafter, "LELD"), Jonathan M. Rolbin, Christine I. McLean; Bureau of Diplomatic Security (hereafter, "DS"), Stephen B. Dietz, III; Bureau of Consular Affairs (hereafter, "CA"), Michele Thoren Bond, John D. Wilcock; U.S. Social Security Administration Office of the Inspector General (hereafter, "SSA OIG"), Patrick P. O'Carroll, Jr., George Penn, Douglas Roloff, Adrienne C. Messer, Matthew Deuchler; John Doe 1-10 (inclusive); and in support of such Complaint avers as follows:

## CAUSE OF ACTION

1.  This is a civil action brought under the U.S. Constitution and Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388, 395-98 (1971), seeking damages and injunctive relief against Defendants for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiff of rights, privileges, and immunities secured by the Constitution and laws of the United States.

2.  Plaintiff claims that Defendants retaliated against Plaintiff for his exercise of constitutionally protected speech by revoking his passport through illegal, fraudulent, and erroneous means; conspired to deprive Plaintiff of both liberty and property without due process of law; and refused or neglected to prevent such deprivations and denials to Plaintiff.

## JURISDICTION AND VENUE

3.  This case arises out of the United States Constitution, as amended. This Court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. §1331 and §1343(a)(1),(3). The declaratory and injunctive relief is authorized by 28 U.S.C. §2201 and §2202 and Rules 56 and 57 of the Federal Rules of Civil Procedure.

4. This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. §1391(e)(1), as some Defendants are officers or employees of the United States. Furthermore, the actions complained of took part in this judicial district; evidence and passport records relevant to the allegations are maintained in this judicial district; and Defendants regularly conduct business in this judicial district.

## STATUTE OF LIMITATIONS

5. This case falls within the applicable Statute of Limitations. This case arises out of a violation of Plaintiff's constitutionally protected rights as a <u>Bivens</u> action. Federal law determines when a Bivens claim accrues, and the law of the forum state determines the statute of limitations for such a claim. In the District of Columbia, the time period for filing a personal injury or not otherwise identified claim is three (3) years (District of Columbia Code Division II. Judiciary and Judicial Procedure § 12-301. Limitation of time for bringing actions). A claim begins to accrue at the time injury occurred or is discovered. (<u>CTS Corp. v. Waldburger</u>, 134 S.Ct. 2175, 2182 (2015)).

6. Here, injury to Plaintiff's constitutionally protected rights was only discovered following a Freedom of Information Act (hereafter, "FOIA") request and the release of a first (and limited) batch of documents on July 10, 2015 (and received on July 23, 2015). As such, the three-year accrual period began on this date and Plaintiff's current action falls within the statute of limitations period.

## PARTIES

7. Plaintiff Jeffrey M. Willett currently resides in Amsterdam, the Netherlands (hereafter, "NL"), following revocation of his U.S. passport No. 218029753.

8. Defendant DOS is a political subdivision of the U.S. Government and a "person" subject to suit within the meaning of 42 U.S.C. §1983. DOS is vested with the authority to grant, issue, and revoke U.S. passports under specific conditions limited by law.

9. Defendant Pompeo is the current Secretary of State for DOS. He is sued for damages in his individual capacity and for declaratory and

injunctive relief in his official capacity.

10. Defendant LELD is a political subdivision of the U.S. Government and DOS and a "person" subject to suit within the meaning of 42 U.S.C. §1983. LELD is vested through DOS with the authority to enforce laws pertaining to U.S. passports under specific conditions limited by law.

11. Defendant Jonathan M. Rolbin is the Director of LELD and responsible for all matters related to the revocation of Plaintiff's U.S. passport. He is sued for damages in her individual capacity and for declaratory and injunctive relief in her official capacity.

12. Defendant Christine I. McLean was the Acting Director of LELD who approved and signed the letter revoking Plaintiff's U.S. passport on December 20, 2012. She is sued for damages in her individual capacity and for declaratory and injunctive relief in her official capacity.

13. Defendant DS is a political subdivision of the U.S. Government and DOS and is a "person" subject to suit within the meaning of 42 U.S.C. §1983. DS serves as advisor on all administrative, management, and resource management matters affecting diplomatic security.

14. Defendant Stephen B. Dietz, III is the Director of DS and responsible for the investigation leading to the revocation of Plaintiff's U.S. passport. He is sued for damages in her individual capacity and for declaratory and injunctive relief in her official capacity.

15. Defendant CA is a political subdivision of the U.S. Government and DOS and a "person" subject to suit within the meaning of 42 U.S.C. §1983. CA is vested through DOS with the authority to strengthen the security of U.S. borders through the vigilant adjudication of visas and passports.

16. Defendant Michele Thoren Bond has been the Acting Assistant Secretary for CA since April 2014 and the person responsible for protecting the interests of U.S. citizens abroad, including those entitled to a post-revocation hearing. She is sued for damages in her individual capacity and for declaratory and injunctive relief in her official capacity.

17. Defendant John D. Wilcock was the Acting Consul General of the U.S. Consulate in Amsterdam (hereafter, "USCA") and the person responsible for holding Plaintiff's post-revocation hearing. He is sued for damages in his individual capacity and for declaratory and injunctive relief in his official capacity.

18. Defendant SSA OIG is a political subdivision of the U.S. Government and a "person" subject to suit within the meaning of 42 U.S.C. §1983. SSA OIG is vested with the authority to conduct investigations specifically related to the administration of SSA programs.

19. Defendant Patrick P. O'Carroll, Jr., is the SSA Inspector General and the person responsible for overseeing the investigation of Plaintiff. He is sued for damages in his individual capacity and for declaratory and injunctive relief in his official capacity.

20. Defendant George Penn was the Deputy Chief Counsel of SSA OIG who refused to open an investigation into waste, fraud, or mismanagement requested by Plaintiff, but who, on information and belief, directed an unauthorized investigation to be opened against Plaintiff. He is sued for damages in his individual capacity and for declaratory and injunctive relief in his official capacity.

21. Defendants Douglas Roloff, Adrienne Messer, and Matthew Deuchler are SSA OIG special agents who surreptitiously conducted the investigation against Plaintiff and threatened Plaintiff with arrest unless he dropped his SSA complaint. They are sued for damages in their individual capacities and for declaratory and injunctive relief in their official capacities.

22. On information and belief, John Doe 1-10, inclusive, conspired with Defendants to defraud Plaintiff of his rights, liberty, and property, as alleged in the Cause of Action. Plaintiff is ignorant of the full names and capacities of said Defendants, but will amend this complaint to allege their true full names and capacities when ascertained. John Does 1-10 are being sued for damages in their individual capacities and for declaratory and injunctive relief in their official capacities.

23. At all times relevant, Defendants acted under color of law.

**FACTS SUPPORTING CAUSES OF ACTION**

**I.    PLAINTIFF LAWFULLY APPLIES FOR NAME CHANGE**

24.   On July 26, 2005, Plaintiff (formerly known as "Michael James Kocik") applied for a name change in Clark County, NV, through his licensed attorney, Shawn Christopher (NV Bar No. 6252).

25.   On December 13, 2005, the Clark County Courts' (hereafter, "CCC") Judge (Sandra L. Pomrenze) assigned to Case No. 05D345320 signed an order legally approving a name change for Plaintiff to "Jeffrey Michael Willett."

26.   At 9:36 AM on December 15, 2005, the signed Order For Change Of Name was stamped as received by CCC for filing. (See **Exhibit A.**)

27.   On January 9, 2006, Attorney Christopher notified Plaintiff (hereafter known as "Jeffrey M. Willett") that he had obtained "the court order for the name change" and ordered certified copies for Plaintiff's use.

28.   On May 9, 2006, Plaintiff applied for a new U.S. passport, submitting an original certified copy of the Order For Change Of Name pursuant to 22 CFR §51.24 ("An applicant whose name has been changed by court order . . . shall submit with his or her application a certified copy of the order"); his current passport (No. 214233441), issued on June 25, 2005; DS-11 application form; and required fees.

29.   On May 16, 2006, DOS issued Plaintiff Passport No. 218029753 under his changed name.

**II.   SSA OIG, DOS, DS, AND LELD ROLES IN REVOKING PLAINTIFF'S PASSPORT**

30.   In July 2009, Plaintiff met a Romanian student (Roxanne Silvia Ciopei) who worked in the United States for three out of four summers between 2005 and 2008 on a J1 Work and Travel Visa.

31.   Although Ciopei completed all paperwork properly, SSA not only issued a social security card with her name misspelled (Roxana Silyia Ciodei), but also gave her wrong numident information (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) to the Internal Revenue Service (hereafter, "IRS").

32. Due to SSA error, IRS issued refund checks (including one in 2008 for $1033) to Ciopei in the wrong name, which could not be cashed by her.

33. Ciopei spent two years trying to correct SSA errors, without success.

34. After obtaining a Power of Attorney (hereafter, "POA"), Plaintiff contacted the SSA, who agreed to issue Ciopei a new corrected social security card, as well as to ensure the IRS issued new checks, if she returned all wrong documents (including IRS checks) to the U.S. Embassy in Bucharest.

35. Ciopei paid a special courier to send all requested documents, thus honoring her part of the agreement. Once received, however, SSA reneged on the agreement, refused to honor the POA or talk further with Plaintiff, and declined to issue Ciopei a new card or contact the IRS on her behalf to correct its own errors.

36. Plaintiff attempted to file a complaint through the SSA, but was rebuffed repeatedly by upper management. (*See* **Exhibit B**, letter from Defendant O'Carroll to Congressman Tom Perriello, dated August 6, 2010.)

37. Plaintiff then escalated his concerns to the SSA OIG (Defendant Penn), who not only refused to open an investigation, but, on information and belief, surreptitiously sent three Federal special agents (Defendants Roloff, Messer, and Deuchler) to Plaintiff's home on May 13, 2010, threatening Plaintiff with arrest unless he agreed to drop his complaint. Plaintiff declined to do so.

38. Only through the disclosure of documents in response to his FOIA request, Plaintiff found out that beginning on or about February 24, 2011, Defendant O'Carroll authorized SSA OIG to launch a criminal investigation against Plaintiff not otherwise authorized by the SSA OIG Mission Statement ("of promoting economy, efficiency, and effectiveness in the administration of . . . . SSA programs and operations and to prevent and detect fraud, waste, abuse, and mismanagement in such programs and operations").

39. Only through the disclosure of documents in response to his FOIA request, Plaintiff found out that SSA OIG personnel also contacted DS

(Defendant Dietz) to open a joint criminal investigation (PF-2011-00862) in which Plaintiff was wrongfully accused of passport fraud.

40. On March 1, 2011, a Passport Records Release Form (PRRF) shows one unnamed special agent (hereafter, "John Doe 1") accessing Plaintiff's passport records.

41. Although said PRRF specifies that "no papers are to be taken from the file," both attachments sent with Plaintiff's May 9, 2006, DS-11 passport application (i.e., original certified copy of the Order For Change Of Name; current passport No. 214233441) have since gone 'missing' from Plaintiff's passport file.

42. DOS has not released any records to show that anyone other than John Doe 1 accessed Plaintiff's passport files between May 9, 2006, and December 20, 2012.

43. DS/SSA OIG personnel (i.e., "John Doe 1-10") convened a Grand Jury to issue broad subpoenas (e.g., 10-4/11GJ1710/11-1156) to obtain intrusive confidential information about Plaintiff, including (but not limited to) bank records, credit reports, credit card statements, travel records, driver's license printouts, and phone records.

44. DS/SSA OIG personnel also extended their intimidation tactics against Plaintiff by sending agents to the homes and businesses of Plaintiff's family and friends. There agents demanded that evidence to be used against Plaintiff be provided and issued subpoenas to appear.

45. In the two years in which DS/SSA OIG personnel conducted their investigation, no incriminating evidence ever was obtained against Plaintiff, nor was Plaintiff formally accused (or found guilty) of any crimes.

46. On October 26, 2011, the US Attorney for Eastern Virginia (EDVA) declined prosecution and refused to bring any criminal charges against Plaintiff.

47. Ignoring EDVA refusal to act, DS/SSA OIG personnel continued a pattern of harassment against Plaintiff for one year further and persisted in its surreptitious investigation against Plaintiff and attempts to

coerce prosecutors in New Hampshire to pursue legal action against him. (See **Exhibit C**, DSS Case Summary 05/14/2015)

48.   On information and belief, once DS/SSA OIG personnel were unable to produce any valid evidence against Plaintiff, special agents decided to 'invent' and 'destroy' evidence with the avowed intent of circumventing the law and causing harm to Plaintiff.

49.   Only through the disclosure of documents in response to his FOIA request, Plaintiff found out that on November 5, 2012, an unnamed DS/SSA OIG special agent sent a memo to CA falsely claiming that "irrespective of any criminal prosecution," Plaintiff was not entitled to a U.S. passport "by virtue of a fraudulent supporting document" and that his current passport needed to be revoked because Plaintiff had "provided a forged Clark County, Nevada, 'change of name' court order when he applied for a passport."

50.   In fact, there was no evidence that the 2005 Order For Change Of Name ever was forged or fraudulent, and claims otherwise were demonstrably false and fraudulent.

51.   On information and belief, on December 20, 2012, Defendants DOS (Pompeo), CA, DS, and LELD (Rolbin, McLean) acted in concert to revoke Passport No. 218029753, thereby retaliating against Plaintiff for his exercise of constitutionally protected speech (i.e., to silence his criticism of the agency in the Ciopei matter).

52.   The DS/SSA OIG criminal case against Plaintiff was formally closed without prosecution as of March 26, 2013.

**III.   DOS, LELD, AND CA REVOKE PLAINTIFF'S PASSPORT**

53.   On August 12, 2014, Plaintiff applied to USCA to have extra visa pages added to Passport No. 218029753, supplying a DS-4085 application along with the proper fees (€62) paid in cash. (See **Exhibit D.**)

54.   Upon his return that afternoon, Plaintiff was informed by USCA that his passport was 'not ready' and that he would have to return another day.

55.   From August 12 to August 14, Plaintiff asked USCA by electronic mail ("email") to confirm if the service paid for had been performed.

56. On August 14, 2014, USCA employees falsely claimed by email that "the service has been completed" and stated that they would "not be responding to any more emails." In fact, the service never was performed, nor were the fees paid ever refunded, in violation of 22 CFR §§13.1, 22.6(a)(2), and §22.6(b).

57. On August 20, 2014:

   a) Plaintiff returned to USCA to collect his passport, but was advised that a 'problem' had arisen when reviewing Plaintiff's application.

   b) USCA employees informed Plaintiff that he would be handed a letter explaining the problem only after signing a receipt in advance. Said receipt specified that it had to be signed in the presence of a notary, although no notary was present at the time of signing.

   c) Plaintiff signed two (2) copies of said receipt and returned both copies to USCA employees, without receiving a copy in return.

   d) USCA employees then handed Plaintiff a letter dated December 20, 2012, signed by Defendant McLean, Acting Director of Legal Affairs for LELD). (See **Exhibit E.**)

58. In the letter dated December 20, 2012, McLean claimed that Plaintiff's Passport No. 218029753 had been revoked pursuant to 22 CFR §51.62(a)(2) because "it has been determined that . . . the passport was obtained illegally, fraudulently or erroneously," based on "new evidence" contained in two separate allegations:

   a) McLean alleged that the <u>first basis for revocation</u> arose because a DOS investigation found that "the District Court of Clark County has no record of your name change or of the court document you provided in support of your passport application."

   b) McLean did not attach any documents verifying an investigation had been conducted, or any sworn statement made by CCC claiming that the record stamped as received for filing by CCC at 9:36 AM on December 15, 2005, no longer existed.

   c) McLean did not cite any statute whereby Plaintiff had a legal obligation to control, or be responsible for, recordkeeping in CCC.

d) McLean alleged that the <u>second basis for revocation</u> arose because a DOS investigation found that "further government records indicate that you continue to identify yourself to government authorities as Michael James Kocik, and not as Jeffrey Michael Willett."

e) McLean did not cite any specific government records at issue, thereby preventing Plaintiff from contesting this vague allegation, in violation of 22 CFR §51.65(a) ("notification will set forth the specific reasons for the denial or revocation").

f) McLean concluded that the revocation was based on "the totality of the circumstances" cited in the above two allegations, with no other issues declared.

59. Plaintiff was not aware of the revocation of Passport No. 218029753 until August 20, 2014, when USCA employees handed him McLean's letter, nor did he have any reason to previously suspect otherwise. (See **Exhibit F.**)

**IV.   STEPS TAKEN TO PROVE REVOCATION WAS ILLEGAL, FRAUDULENT, AND IN ERROR**

60. On August 20, 2014:

a) Plaintiff retained Attorney Bart Stapert in Amsterdam to challenge the notice of revocation received that same day.

b) Attorney Stapert contacted Attorney Christopher at the <u>same</u> phone number and fax listed on the 2005 Order For Change Of Name. (Compare http://bklasvegas.com/bkprofile.html with **Exhibit A.**)

c) Attorney Christopher immediately sent Attorney Stapert "a digital file of the name change petition, including a copy of the court order, dated December 13, 2005, formally changing" Plaintiff's name. (See **Exhibit G.**)

d) Attorney Stapert then asked NV attorney Mace Yampolsky to send a paralegal to CCC to investigate why the original Order For Change Of Name, stamped as received for filing by CCC at 9:36 AM on December 15, 2005, was 'missing'.

e) Paralegal Theresa Muzgay informed Attorney Stapert that, within one (1) hour of arriving at CCC, the allegedly 'nonexistent' court order

and accompanying court documents were found, although misfiled under a wrong name. (See **Exhibit H.**)

61. Plaintiff subsequently went online to the CCC website, entered Case No. 05D345320, and found the 'missing' record in a few seconds. (See https://www.clarkcountycourts.us/Anonymous/Search.aspx.)

62. On September 3, 2014, a duplicate certified copy of the Order For Change Of Name was obtained and stamped as original. (See **Exhibit I.**)

63. The 2014 certified copy of the Order For Change Of Name not only is _identical_ to the 2005 certified copy submitted by Plaintiff to DOS on May 9, 2006, but also to the 2005 Order stamped as received for filing by CCC at 9:36 AM on December 15, 2005 (and now 'missing' from Plaintiff's passport files).

64. All information obtained by Attorney Stapert could easily have been obtained by Defendants if they had conducted a proper investigation and acted as a reasonably prudent person is expected to act under law.

65. On information and belief, Defendants did not contact any of the below individuals at any time between May 9, 2006, and December 20, 2012, before revoking Plaintiff's passport:

   a) CCC Judge Pomrenze, who signed the original certified copy of the 2005 Order For Change Of Name, thus proving it was _not illegal_.

   b) CCC notary who verified that the 2005 Order For Change of Name submitted by Plaintiff was a "true and correct copy of the document on file," thus proving it was _not fraudulent_.

   c) NV attorney Shawn Christopher, who processed the name change, thus proving that it was _not in error_.

   d) Plaintiff, who could have easily provided assistance in locating the lost record by providing the relevant case number, names and information to agents, thus proving that it was _not invalid_.

66. Defendants had a duty to conduct a proper investigation before revoking Plaintiff's Passport No. 218029753, and their failure to do so not only was grossly negligent, but also illegal, fraudulent, and in error.

67. As a result Plaintiff has suffered considerable damages.

**V.   REQUEST FOR POST-REVOCATION HEARING**

68. On September 12, 2014:

> a) Attorney Stapert contacted Randy W. Berry, Consul General of USCA, explaining the steps taken to prove that Plaintiff had obtained the Order For Change Of Name legally, properly, and without error. (See **Exhibit G.**)

> b) Attorney Stapert requested a post-revocation hearing through CA (under the supervision of Defendant Thoren Bond) pursuant to 22 CFR §51.70: "A person whose passport has been . . . revoked under . . . §51.62(a)(2) may request a hearing to the Department to review the basis for the . . . revocation within 60 days of receipt of the notice of . . . revocation." Thus, said request for a post-revocation hearing was timely under law.

> c) In order to mitigate damages, Attorney Stapert also requested that Plaintiff be issued a temporary travel document ("laissez-passer") while a post-revocation hearing was pending.

> d) USCA acknowledged receipt of the hearing request, along with the request for a temporary travel document, stating that it had "forwarded the request to the appropriate office at the Department of State in Washington, DC."

69. On September 18, 2014, Romana Michiels from Attorney Stapert's office spoke with Grant Phillipp, USCA Vice Consul, who informed Michiels that DOS "decided that [Plaintiff was] not eligible for any kind of temporary travel document." No reason was given for the refusal.

**VI.   DOS REISSUES PASSPORT WITHOUT RAISING EITHER REVOCATION ISSUE**

70. DOS has no mechanism in place to deal with illegal, fraudulent, or erroneous revocations, other than to force injured parties to wait 60 days for a hearing pursuant to 22 CFR §51.70(c).

71. On September 18, 2014, Vice Consul Phillipp contacted Attorney Stapert's office to induce Plaintiff to apply for a new passport, while waiting for the outcome of a post-revocation hearing.

72. On information and belief, DOS was aware that Plaintiff's Passport No. 218029753 already had been sent for destruction and knowingly chose not to advise Plaintiff or his attorney of that fact when offering Plaintiff a 'choice' that, in fact, did not exist.

73. Attorney Stapert advised Plaintiff that he could apply for a new passport, without waiving any claims or damages against Defendants, or the statutory right to a post-revocation hearing.

74. On September 22, 2014, Attorney Stapert contacted Vice Consul Phillipp, asking not only for a reduction in passport fees, but also a temporary travel document so that Plaintiff could travel freely. Vice Consul Phillipp did not comply with either request.

75. On September 23, 2014, Plaintiff applied for a new passport, submitting to USCA employees a DS-11 application form, fees (€108), and the same original certified copy of the 2005 Order For Change Of Name already in DOS possession since May 2006.

76. On September 29, 2014, USCA notified Attorney Stapert that Plaintiff's "new passport is ready for collection."

77. On September 30, 2014, Plaintiff collected new Passport No. 505869857.

78. At no time before issuing Plaintiff new Passport No. 505869857 did DOS, LELD, DS, or CA question the validity of the duplicate Order For Change Of Name already in their possession since May 2006, which was the first basis for revocation cited by McLean on December 20, 2012.

79. At no time before issuing Plaintiff new Passport No. 505869857 did DOS, LELD, DS, or CA raise the second basis for revocation (i.e., "that you continue to identify yourself to government authorities as Michael James Kocik") cited by McLean on December 20, 2012.

80. At no time between revocation of Plaintiff's Passport No. 218029753 in 2006 and issuance of the new Passport No. 505869857 in 2014 did DOS, LELD, DS, or CA cite any intervening, superseding or other circumstance as a basis for approval, nor did Plaintiff provide any documentation other than the duplicate Order For Change Of Name.

81. Therefore, the joint revocation of Plaintiff's Passport No. 218029753 by DOS, LELD, DS, or CA had no basis in fact or law and was motivated by extralegal reasons not contemplated by statute.

**VII. DOS DESTROYS PLAINTIFF'S OLD PASSPORT PRIOR TO POST-REVOCATION HEARING**

82. On September 30, 2014, Plaintiff requested the return of old Passport No. 218029753, which contained vital entry/exit stamps and visas necessary to cross borders, but Vice Consul Phillipp stated that USCA had been ordered to "return it for destruction."

83. That same day, Attorney Stapert contacted Phillipp and requested confirmation as to the status of said passport, as well as a mitigating letter "stating that Mr. Willett's old passport was 'inadvertently' destroyed in the process of issuing a new one."

84. In response, Phillipp responded that he had "forwarded this request to the Department in Washington."

85. On October 8, 2014, Phillipp informed Attorney Stapert that Plaintiff's "passport was sent for destruction by the Department, so there is no way to retrieve it."

86. 22 CFR §51.66 specifies that "the bearer of a passport that is revoked must surrender it to the Department or its authorized representative upon demand." There is no requirement in 22 CFR, however, authorizing destruction of a revoked passport when a post-revocation hearing to determine its status is requested in a timely manner, and said hearing is pending at the time of destruction.

**VIII. DOS COMPELS PLAINTIFF TO FILE AN FOIA REQUEST, THEN IGNORES IT**

87. On October 14, 2014, pursuant to 5 U.S.C. §552, Plaintiff filed a FOIA request to obtain the entire contents of his passport file, as well as all documents DOS allegedly used as grounds for revocation of his passport.

88. DOS acknowledged receipt of Plaintiff's FOIA request the following day and forwarded the request to LELD for processing. (See **Exhibit J.**)

89. Pursuant to 5 U.S.C. §552(a)(6)(A)(i), DOS must "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after

the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination."

90. At no time during the 20-day statutory period did DOS or LELD either make such a determination, reject the FOIA request, release documents, or provide any basis for withholding evidence.

91. On January 2, 2015, Defendant Wilcock claimed that he would check with his "colleagues in Washington . . . [to] see if they can get an estimate of how long the FOIA request will take." In fact, Defendant Wilcock never obtained any information on behalf of Plaintiff.

92. On January 13, 2015, Defendant Wilcock confirmed that "the FOIA process is the only mechanism by which documents can be released" by DOS.

93. Between November 17, 2014, and March 7, 2015, Plaintiff contacted DOS and LELD approximately 11 times (including two separate faxes to FOIA Public Liaison Marianne Manheim) to obtain information about his FOIA request. DOS and LELD did not respond to any of those communications.

94. On March 9, 2015, Marianne Manheim advised Attorney Stapert that "there is no valid FOIA on record," although she confirmed that DOS never raised objections within the 20-day statutory period: "However, a letter is typically provided to a requester when a case does not meet requirements. It appears that this letter was not sent."

95. DOS or LELD failure to comply with 5 U.S.C. §552(a)(6)(A)(i) does not impose any legal obligations on Plaintiff as a result of that joint negligence.

96. As a courtesy, Attorney Stapert faxed a duplicate copy of Plaintiff's FOIA request to DOS on March 10, 2015, but without consenting to any change in tolling periods from the original request.

97. On March 20, 2015, DOS replied to Plaintiff's FOIA request without releasing _any_ requested documents, or specifying _any_ exemptions for withholding the documents asked for. (See **Exhibit K.**)

98. Plaintiff was invited to file a blind 'appeal' without knowing the

basis for denial, although DOS bears the burden of specifying why specific records are being withheld. (See 5 U.S.C. §552(a)(4)(B).)

99. Plaintiff's concerns (dated April 21, 2015) were elevated within DOS to Karen Finnegan Meyers (Chief, Programs and Policies Division).

100. On May 20, 2015, Meyers acknowledged problems with filling Plaintiff's FOIA request, stated that the Office of Passport Services (PPT) had "agreed to conduct another search of its records systems based on the . . . . information you provided," and gave Plaintiff until June 20, 2015, to file an administrative appeal.

101. On June 3, 2015, Manheim stated that PPT still was working on Plaintiff's FOIA request, but thought the "first response will be sent within a few weeks."

102. That same day, however, Katrina Wood from the FOIA Requester Service Center informed Plaintiff that "The estimated completion date (ECD) for this case is: December 2016", some 18 months later.

103. On June 4, 2015, Manheim advised Plaintiff that as searches were still "ongoing . . . that you wait to file an appeal until after all searches are completed" (i.e., after December 2016).

104. On July 10, 2015, DS released a second batch of FOIA documents, partially satisfying only two (2) of the 17 batched items requested.

105. To date, the overwhelming balance of Plaintiff's FOIA request continues to be ignored, thereby preventing him from reviewing all available evidence and calling witnesses based on that evidence.

## IX.   'MISSING' RECORDS

106. On March 10, 2015, Defendant Wilcock sent Attorney Stapert an email, stating categorically that Plaintiff's FOIA request would not "include anything related to the revocation" of his passport and also flatly predicted that Plaintiff's files only would contain his "passport application".

107. The DOS privacy policy states that, "under the provisions of the FOIA and Privacy Act, access to information about private individuals cannot be given to unauthorized third parties absent the individuals' written

consent."

108. Plaintiff never gave anyone at DOS written consent to discuss his FOIA request with Defendant Wilcock, or any other third party.

109. Oddly enough, the only materials sent to Plaintiff by DOS on March 20, 2015, were incomplete copies of his 2006 and 2014 passport applications, as Defendant Wilcock had predicted would be 'found'.

110. Plaintiff submitted two documents in attachment with his 2006 passport: (1) his current passport (No. 214233441), and (2) an original certified copy of the 2005 Order For Change Of Name, stamped as received by CCC at 9:36 AM on December 15, 2005.

111. DOS sent neither attachment, although both documents are noted as received in Plaintiff's 2006 passport application. (See **Exhibit L**.)

112. Furthermore, none of the alleged 'hearing evidence' belatedly released by Defendant Wilcock on December 12, 2014 (see paragraph 130), was in Plaintiff's passport file.

113. Between April 21 and May 18, 2015, Plaintiff contacted DOS employees Regina Ballard (DOS Division Chief of Passport Records), Marianne Manheim, and Karen Finnegan Meyers approximately 12 times, requesting an explanation for the 'missing' records as well as an investigation into the parties responsible for tampering with Plaintiff's passport records. DOS ignored all of Plaintiff's requests.

114. On May 19, 2015, Meyers claimed that "this office has no investigatory authority" into missing passport records.

115. On May 20, 2015, Meyers admitted that DOS was unable to explain why a duplicate FOIA request resulted in no records being found; why the documents noted as clearly 'missing' were not produced; or why a formal investigation was not opened into record tampering.

116. Plaintiff was continuously stonewalled in his attempts to get a proper investigation opened, being advised variously to contact the Department of Justice, the Federal Bureau of Investigation, the DOS OIG, and the Executive Office of the Bureau of Consular Affairs, all in vain.

117. On information and belief, John Doe 1, who accessed Plaintiff's passport records on March 1, 2011 (see paragraphs 41-43), also conspired to obstruct the finding of the 2005 Order For Change Of Name from CCC (see paragraph 181 d), thereby depriving Plaintiff of his rights, liberty, and property under law.

X.    **DOS FAILS TO HOLD STATUTORY POST-REVOCATION HEARING WITHIN 60 DAYS**

118. 22 CFR §51.70(a) mandates that a post-revocation hearing must be requested "within 60 days of receipt of the notice of the denial or revocation."

119. Plaintiff first received notification of the revocation of the passport on August 20, 2014. (See paragraphs 57-59.)

120. On behalf of Plaintiff, Attorney Stapert made a timely request for a post-revocation hearing on September 12, 2014, which DOS acknowledged receiving that same day.

121. 22 CFR §51.70(c) mandates that a post-revocation hearing must be held "within 60 days of the date the Department receives the request".

122. On October 22, 2014, Defendant Wilcock confirmed that the post-revocation would be held in "Amsterdam on behalf of the Department," thereby forcing Plaintiff to remain overseas until the hearing was held.

123. Pursuant to 22 CFR §51.70(c), Plaintiff's post-revocation hearing had to be held on or before November 11, 2014.

124. In fact, DOS never held Plaintiff's post-revocation hearing at all, instead engaging in a repeated pattern of obfuscation, delay, and extralegal 'bullying' behavior not contemplated by statute and resulting in substantial injury to Plaintiff.

125. On November 12, 2014, after the statutory 60-day period had expired, Defendant Wilcock first attempted to schedule a post-revocation hearing for November 19.

a) The hearing date suggested was less than the "10 business days written notice of the date . . . of the hearing," in violation of 22 CFR §51.70(d).

b) At no time prior to attempting to schedule a hearing did DOS release any evidence so that Plaintiff could prepare for such a hearing, in violation of 22 CFR §51.71(d).

c) Furthermore, Plaintiff's 90-day right to stay in the Netherlands expired that day, placing Plaintiff in a Catch-22 situation where he could neither stay legally in the Netherlands to wait for a hearing, nor leave because his old passport (with entry/exit stamps and visas) had been surreptitiously destroyed by DOS.

126. On December 9, 2014, Plaintiff duly advised Defendant Wilcock that the proposed hearing was beyond the statutory period allowed, and that Plaintiff would not attend any hearing scheduled after the fact until all evidence necessary to prepare for such a hearing was released.

127. Defendant Wilcock responded that he would "seek appropriate guidance on how the Department wishes to respond."

128. On December 10, 2014:

a) Attorney Stapert advised Defendant Wilcock that "the FOIA information is crucial" and no hearing could be held "until such information is received."

b) Defendant Wilcock confirmed that the hearing date proposed was "after the deadline", but said "if no hearing date is agreed upon by Dec. 31 we will close the file and consider the hearing waived."

c) Plaintiff asked Defendant Wilcock why Plaintiff "should be required to wait for a hearing longer than the 60 days specified by law," and advised that Wilcock either fill the FOIA request on his own recognizance, or "instruct your Department to release all of my records voluntarily" before the arbitrary December 31 deadline.

d) Defendant Wilcock did not respond to either of Plaintiff's two options.

129. Nothing in 22 CFR §51.70 authorizes Defendant Wilcock to set the arbitrary deadline of December 31, 2014.

130. On December 12, 2014, one month after the statutory deadline had expired to hold a post-revocation hearing:

  a) Defendant Wilcock released "evidence that will be presented during the hearing," but could not "say with certainty that this comprises the entire file of data . . . revealed through your FOIA request." By March 10, 2015, however, Defendant Wilcock had become 'certain' what incomplete evidence would be released, raising legitimate questions as to the intent of DOS compliance with Plaintiff's FOIA request, as well as his statutory right to a hearing.

  b) Of the evidence released, one document was linked to the alleged first basis for revocation and five documents were related to the alleged second basis for revocation.

  c) None of the documents supported revocation pursuant to 22 CFR §51.62(a)(2).

## XI.    DOS HEARING EVIDENCE DOES NOT WARRANT REVOCATION UNDER LAW

131. The burden of proof in a post-revocation hearing resides solely with DOS, who must prove that Plaintiff had obtained Passport No. 218029753 "illegally, fraudulently or erroneously" per 22 CFR §51.62(a)(2).

132. Of the six documents released, five apply to the second basis for revocation (i.e., "that you continue to identify yourself to government authorities as Michael James Kocik").

  a) None of the 'hearing' evidence consists of any government records, or statements made by Plaintiff to any government authority.

  b) DOS issued Plaintiff new Passport No. 505869857 on September 30, 2014, without ever once raising the second basis as a viable issue.

  c) Furthermore, on June 9, 2015 (see paragraph 150), Defendant Wilcock admitted that DOS intended to limit the scope of the hearing only to the first basis for revocation and not raise the second basis at all.

  d) Therefore, the second basis for revocation is moot, has no bearing in fact or law, and must be resolved in Plaintiff's favor.

133. Only one document applies to the <u>first basis for revocation</u>, which is the letter dated February 15, 2011, approved by Steven Grierson and signed by Nicole Silva, on behalf of CCC. (See **Exhibit M.**)

    a) This letter is not certified as true or accurate, is not an affidavit under oath, and is not addressed to any specific party, thereby raising questions how DS/SSA OIG obtained a copy.

    b) This letter does not list Plaintiff's full changed name correctly.

    c) This letter does not state that the 2005 Order For Change Of Name was obtained illegally, fraudulently, or in error (much less that it had been 'forged'), but merely states that the 'record' could not be 'found'.

    d) This letter does not explain why a 'record' certified as having been received by CCC at 9:36 AM on December 15, 2005, suddenly could not be 'found' some five years after being lawfully filed.

    e) This letter does not explain what 'information' DS/SSA OIG allegedly presented to CCC before requesting a records search, or why a record easily available online could not be 'found'.

    f) This letter does not explain why Plaintiff's records were transferred twice by CCC, with the latest transfer made on January 1, 2011 (to a judge in the Civil/Criminal Division), some six (6) weeks before Grierson and Silva issued their inaccurate letter.

134. Curiously, some 23 months elapsed between the time DOS received this inaccurate letter and the date when Plaintiff's Passport No. 218029753 was revoked. DOS, LELD, DS, or CA offer no explanation for the delay.

135. The <u>de novo</u> standard for review is 'preponderance of the evidence.'

136. Set beside the unverified February 15, 2011, letter that DOS offers as its sole piece of revocation evidence is the original 2005 Order For Change Of Name, which Plaintiff submitted with his 2006 passport application pursuant to 22 CFR §51.24 ("An applicant whose name has been changed by court order . . . shall submit with his or her application a certified copy of the order").

a) This Order was certified by a CCC notary as being "a True and Correct Copy of the Document on File". DOS does not allege that the notary who certified the copy did not exist, or that Plaintiff had obtained the notary's signature in any illegal, fraudulent, or erroneous way.

b) This Order was signed by CCC Judge Sandra L. Pomrenze. DOS does not allege that Judge Pomrenze did not exist, or that Plaintiff obtained her signature in any illegal, fraudulent, or erroneous way.

c) This Order contained the contact information for the NV attorney who processed the name change on Plaintiff's behalf. DOS does not allege that Shawn Christopher did not exist, or that Plaintiff obtained Christopher's aid in any illegal, fraudulent, or erroneous way.

d) In order to prevail on the facts under 22 CFR §51.62, DOS has to prove beyond a reasonable doubt that Plaintiff obtained this Order illegally, fraudulently, or in error. No such facts exist, as the duplicate Order filed with DOS on September 23, 2014, was an exact copy of the Order already on file with DOS as of May 2006. Inasmuch as Plaintiff submitted no new evidence to be issued a new passport in 2014, the 2012 revocation clearly is unsupported by any facts.

e) In order to prevail on the law under 22 CFR §51.62, DOS has to cite a statute making Plaintiff legally responsible for recordkeeping in CCC. DOS cites no such legal obligation.

f) Therefore, the first basis for revocation has no bearing in fact or law, and must be resolved in Plaintiff's favor.

137. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff is entitled to summary judgment on both revocation issues as a matter of fact and law, and Defendants should be compelled to offer restitution to Plaintiff for damages sustained by the illegal, fraudulent, and erroneous revocation of Passport No. 218029753 as well as the infringement upon Plaintiff's constitutionally protected First, Fourth, Fifth and Fourteenth Amendment rights.

## XII.   DOS AND CA UNLAWFULLY WAIVE PLAINTIFF'S RIGHT TO A HEARING

138.   On December 10, 2014, before any hearing evidence was released to Plaintiff at all (see paragraph 128), Defendant Wilcock advised Plaintiff that "if no hearing date is agreed upon by Dec. 31 we will close the file and consider the hearing waived."

139.   On December 19, 2014, Plaintiff advised Defendant Wilcock that the hearing evidence sent was "incomplete, as the evidence is insufficient to justify revocation under 22 CFR §51.62 and thus raises serious questions about the standard of care exercised before the decision was taken."

140.   On December 31, 2014, Attorney Stapert reiterated to Defendant Wilcock that Plaintiff had not "waived his right" to a post-revocation hearing; that the "relevance and importance of [FOIA] information for the revocation hearing should be obvious"; and that Plaintiff would not attend a hearing until "he will be able to present his case based on the complete record".

141.   On January 2, 2015, Defendant Wilcock stated that he had "checked with Washington, and we don't object to a postponement of the hearing"; promised to ask his "colleagues in Washington [to] see if they can get an estimate of how long the FOIA request will take"; and advised that if the FOIA request was still pending "within 90 days (March 31)" to contact him "to confirm that you still remain interested in a hearing."

142.   At no time was Plaintiff formally or informally notified that delaying his hearing until all FOIA information was received would have any impact on his right to hold said hearing or be considered a waiver of that legal right; in fact, he had been informed multiple times by Defendant Wilcock that the opposite was true.

143.   On February 6, 2015, however, DOS and Defendant Wilcock changed course for the second time and claimed that he had been instructed by CA "to schedule the revocation hearing without delay" as of March 20, 2015; that as Plaintiff had "been issued a new United States passport, no remedy remains for him as a result of the hearing"; and that if Plaintiff did not agree to this, then "we will consider the hearing request withdrawn and will close [Plaintiff's] file."

144.  As no legal basis was provided for why Plaintiff should participate in a hearing where evidence was withheld, witnesses blocked from being called, or remedies limited, he declined to respond.

145.  On March 18, 2015, Attorney Stapert confirmed that he had spoken with Defendant Wilcock and that the "hearing has been postponed" while Plaintiff's FOIA request was pending.

146.  On May 31 and June 3, 2015, Plaintiff contacted DOS about his long overdue FOIA request, and copied Defendant Wilcock on both emails.

147.  On June 3, 2015, DOS and Defendant Wilcock changed course for the third time and advised Attorney Stapert that as Wilcock was leaving the Netherlands at the end of July, "We will need to wrap this up soon or the Department will simply ask me to inform you that the opportunity for a hearing has passed. . . . However, if the hearing is not held by July 18 [Plaintiff] will not get a hearing at all." Once again, no legal basis was provided for any of these arbitrary deadlines, nor was all evidence released to allow Plaintiff to prepare for such a hearing.

148.  On June 8, 2015, Defendant Wilcock contacted Plaintiff directly and warned that if DOS did "not get a date on the schedule within the next 24 hours then the case will be closed" and that he was "not prepared to discuss any other issues than the date of the hearing."

149.  In reply, Plaintiff advised Defendant Wilcock that "If you are prepared on your own recognizance to release within 24 hours all documents in my FOIA request, . . . then state so." Wilcock ignored this email.

150.  On June 9, 2015, Defendant Wilcock made the following extralegal claims:

a)  "The sole issue for consideration at the hearing would have been the record, or lack thereof, of your name change certificate at the time the passport was revoked."

b)  "You previously reviewed the documentation of a lack of name change certificate which would have been reviewed at the hearing."

c)  "Additionally, you were issued new U.S. passport number 505869857 on September 23, 2014; the remedy that would have been available should

you have prevailed at a hearing."

d) "Given our efforts to schedule a hearing, and given also that the available remedy should you have prevailed has already been provided to you, the office in Washington on whose behalf the Consulate General would have held the hearing has at this point deemed your request for a hearing waived and has closed the hearing file."

151. In response, Plaintiff denied DOS had authority to withhold evidence; bar witnesses from being called based on that evidence; restrict the scope of a hearing only to issues DOS chooses to discuss (i.e., not all issues cited in the revocation letter); or to limit remedies resulting from a wrongful revocation. Wilcock ignored this email.

152. On June 16, 2015, DOS and Defendant Wilcock changed course for the fourth time, stating: "Washington has advised me we can schedule your hearing for June 26. This is the final date that can be offered."

a) Once again, 22 CFR §51.70(d) mandates that a requestor will receive "not less than 10 business days" written notice of the date . . . of the hearing. The proposed date offered only 7 business days' notice.

b) At no time did DOS release a complete record of Plaintiff's file so that all evidence could be reviewed by a hearing officer to make the requisite "findings of fact" per 22 CFR §51.74, and witnesses called based on that unreleased evidence.

c) Again, Plaintiff and his attorney declined to be drawn into any hearing not compliant with Plaintiff's rights under law.

153. On June 29, 2015, Defendant Wilcock continued to make extralegal claims, declaring to Attorney Stapert that "this was the last opportunity for a hearing and the hearing file is now closed. The FOIA request is a separate inquiry that you and Mr. Willett are welcome to continue to pursue." Oddly enough, Defendant Wilcock provided no legal basis to assert that "the entire file of data that would be released through [Plaintiff's] FOIA request" as of December 12, 2014, suddenly was no longer relevant to a fair and impartial statutory hearing on whether Plaintiffs' passport had been revoked "illegally, fraudulently, or erroneously."

154.  Plaintiff has made every good faith effort to resolve this matter equitably, and instead has been forced to suffer hardship, injury and damages since August 20, 2014 – more than 47 months.

    a) Plaintiff has been stranded in the Netherlands without a valid entry stamp for his passport for over three years.

    b) Plaintiff has been unable to legally acquire work or housing due to destruction of his passport.

    c) Plaintiff has been unable to conduct business abroad or travel without risking a temporary or permanent ban on entry into the European Union due to a missing entry stamp.

    d) Without an entry stamp, Plaintiff is unable to acquire residency in the Netherlands or other European Union states.

## XII.   FEDERAL QUESTIONS

155.  Inasmuch as Plaintiff has reached an impasse with DOS, this court is asked, pursuant to 28 U.S.C. §1331, to resolve the following **Federal questions** regarding the proper interpretation of 22 CFR:

    a) Does 22 CFR §51.70 give DOS the right to hold a post-revocation hearing after the 60-day statutory period expires, if DOS is solely responsible for its failure to timely hold such a hearing within the statutory deadline?

    b) Does DOS failure to comply with 22 CFR §51.70 and hold a hearing within 60 days violate the 'prompt' remedy to which Plaintiff is entitled under law?

    c) Does 22 CFR §51.66 and the Fifth Amendment entitle a person whose passport has been revoked to the presumption of innocence (and the corresponding protection of property) until such time as findings of fact are made in a proper post-revocation hearing?

    d) If so, does 22 CFR §51.66 and the Fifth Amendment allow DOS to destroy a revoked passport when a post-revocation hearing has been requested in a timely fashion, but before said hearing can be held?

e) If 22 CFR §51.70(d) states that "Formal rules of evidence will not apply" in a post-revocation hearing, then what rules of evidence do apply? Is DOS entitled to be the sole arbiter of evidence presented in a hearing and entitled not only to withhold evidence, but block the calling of relevant witnesses based on withheld evidence?

f) Does 22 CFR §51.70 authorize DOS to limit the scope of a post-revocation hearing only to those issues DOS wants to discuss, and not to all reasons cited as the basis for revocation?

g) Does 22 CFR §51.70 limit the remedies Plaintiff is entitled to under law if a revocation is overturned? If not, then is the intent of the statute to make an injured party 'whole' again if the revocation is overturned, or shown to be illegal, fraudulent, and in error?

h) Does 22 CFR entitle DOS to waive Plaintiff's right to a hearing?

i) Does available DOS hearing evidence entitle Plaintiff to summary judgment against Defendants, per Rule 56 of the Federal Rules of Civil Procedure, on both the facts and the law, even without benefit of a post-revocation hearing?

**CLAIMS FOR RELIEF**

**FIRST CAUSE OF ACTION**
*Bivens* / **Violation of Fourth Amendment Rights**
**Protection Against Unreasonable Search and Seizure**

156.   Plaintiff incorporates by reference the foregoing allegations as if fully set forth in this paragraph.

157.   Defendants DS/SSA OIG, Defendants Douglas Roloff, Adrienne Messer, and Matthew Deuchler and Defendants John Doe 1-10 negligently, intentionally and willfully abridged Plaintiff's constitutionally protected Fourth Amendment rights against unreasonable search and seizures by conducting an unlawful investigation of Plaintiff and obtaining confidential, protected financial and personal information relating to Plaintiff without probable cause or reasonable suspicion of wrongdoing.

a) Under law, a government official may be held liable for Fourth Amendment violations when "conduct [violates] clearly established statutory or constitutional rights of which a reasonable person would have known." (<u>Pearson v. Callahan</u>, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982))).

b) "A right is 'clearly established' if 'the contours of the right [are] sufficiently clear' so that a reasonable officer would have understood, under the circumstances at hand, that his behavior violated the right.'" (<u>Bailey v. Kennedy</u>, 349 F.3d 731, 741 (4th Cir. 2003) (quoting <u>Wilson v. Layne</u>, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)).

c) That a government agent is required to have probable cause of wrongdoing before intruding upon the protected rights of citizens is certainly clearly established under law.

d) Defendants have, to date, failed to release any relevant documentation, evidence, or information justifying such an investigation of Plaintiff or articulating either probable cause or reasonable suspicion.

158. Under <u>Bivens v. Six Unknown Agents of Federal Bureau of Narcotics</u>, an implied right of action for damages is created and a plaintiff is entitled to recovery when constitutional rights have been deprived by government agents and Congress has not provided a specific mechanism for recovery. (403 U.S. 388, 395-98 (1971), *see also* <u>Vanderklok v. United States 868 F.3d 189, 198 (2017)</u>).

a) Action under Bivens is appropriate when (1) there is no alternative remedy available to a Plaintiff and (2) there is a compelling reason to create a new cause of action. (*See* <u>Wilkie v. Robbins</u>, 551 U.S. 537, 538-39 (2007).

b) Firstly, while 28 U.S. Code § 2679 (FTCA) creates a cause of action in instances where wrongful actions of government agents operating within the scope of their employment bring about harm or injury to

a Plaintiff, it does not apply here because it is limited to *only* agents acting *within the scope of his/her employment*.

    i. Defendants' unlawful investigation falls outside of the scope of employment; thus, not satisfying the requirement of the FTCA – leaving Plaintiff without a statutory remedy.

    ii. Issuance to Plaintiff of a new passport only serves to remedy damages suffered *in part*.

c) Secondly, a cause of action is appropriate because, if left unchecked, Defendants could repeatedly intrude upon the constitutionally protected rights of citizens through fraudulent, retaliatory and unlawful investigations with the sole intent to harass or intimidate.

159. As a direct and proximate result of Defendants' violations of Plaintiff's statutory and constitutional rights, Plaintiff has suffered severe and substantial damages. These damages include lost housing, lost salary, lost career and business opportunities, lost property, loss of liberty, loss of health, litigation expenses including attorney fees and costs, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, and other compensatory damages, in an amount to be determined by a jury and the Court.

### SECOND CAUSE OF ACTION

### Violation of Fourteenth Amendment
### Privileges and Immunities Rights

160. Plaintiff incorporates by reference the foregoing allegations as if fully set forth in this paragraph.

161. Pursuant to 22 CFR §51.70, and within 60 days of request, Plaintiff was contractually entitled to a post-revocation hearing to determine if the DOS revocation of Passport No. 218029753 should be upheld or denied.

162. Said hearing never was held before the 60-day statutory period expired.

163. Plaintiff requested postponement of a hearing only _after_ the 60-day period had expired, and until such time as all evidence was released and examined, and witnesses called based on that evidence, so that an adequate defense could be prepared.

164. Defendants failed to release all evidence necessary for Plaintiff to provide an adequate defense; compelled Plaintiff to file an FOIA request to obtain that evidence; agreed to wait until Plaintiff's FOIA request was filled; and then reneged four times on that agreement, before finally depriving Plaintiff of his full and equal right to such a hearing after forcing Plaintiff to remain overseas indefinitely, waiting for a hearing that never was held.

165. Defendants acted intentionally and with callous disregard for Plaintiff's clearly established statutory and constitutional rights, including the enjoyment of equal privileges and immunities as a citizen of the United States under the law.

166. As a direct and proximate result of Defendants' violations of Plaintiffs' constitutional rights, Plaintiff has suffered severe and substantial damages as enumerated in paragraphs 159 and 173, in an amount to be determined by a jury and Court.

### THIRD CAUSE OF ACTION

### Violation of Fifth Amendment
### Due Process Clause

167. Plaintiff incorporates by reference the foregoing allegations as if fully set forth in this paragraph.

168. DOS compelled Plaintiff to pay for extra visa pages to be added to Passport No. 218029753, but unlawfully destroyed said passport without performing the service in question (in violation of 22 CFR §13.1 and §22.6(a)(2)), or refunding fees (in violation of 22 CFR §22.6(b)).

169. Furthermore, while a post-revocation hearing was pending, DOS destroyed Passport No. 218029753 before said hearing could be held, thereby depriving Plaintiff of his liberty and property without due process, while also rendering said hearing 'moot' under law.

a) Under law, a post-revocation hearing has the sole right to determine the propriety of the revocation, as well as the disposition of a revoked passport within the 60-day statutory period.

b) Unilateral destruction of a revoked passport allows DOS to pronounce guilt before a hearing can be held to review findings of fact and render a proper verdict. (See 22 CFR §51.74; Fifth Amendment.)

c) Under law, a fundamental requirement of due process is "the opportunity to be heard" (see Grannis v. Ordean, 234 U. S. 385, 234 U. S. 394). However, "this right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest" (see Mullane v. Central Hanover Bank & Tr. Co., 339 U. S. 306, at 339 U. S. 313 (1950)).

d) At a minimum, due process requires that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case" (see Mullane v. Central Hanover Bank & Tr. Co., 339 U. S. 306, at 339 U. S. 313 (1950)).

e) A corollary to the above requirements is that any hearing required by due process must be held before the effective decision is made (see Armstrong v. Manzo, 380 U. S. 545 (1965)).

f) In this case, Defendants acted first, made an irreversible effective decision without notice, dangled an opportunity for Plaintiff to object after the fact, and then blocked any hearing at all.

170. Furthermore, one key principle of common law is that the accused bears a presumption of innocence until the government proves guilt beyond a reasonable doubt: "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, . . . and its resultant, the doctrine of reasonable doubt, . . . indicate the necessity of enforcing the one in order that the other may continue to exist." (See Coffin v. United States, 156 U.S. 432 (1895)).

171. By secretly destroying Plaintiff's old passport before a post-revocation hearing could be held, DOS waived Plaintiff's presumption of

innocence and ignored the doctrine of reasonable doubt, thereby devolving on itself the roles of judge, jury, and executioner.

172. Defendants acted intentionally and with callous disregard for Plaintiff's clearly established statutory and constitutional rights.

173. As a direct and proximate result of Defendants' violations of Plaintiff's statutory and constitutional rights, Plaintiff has suffered severe and substantial damages. These damages include fees paid, lost property, loss of liberty by being restrained from free travel, loss of health, litigation expenses including attorney fees and costs, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, and other compensatory damages, in an amount to be determined by a jury and the Court.

**FOURTH CAUSE OF ACTION**
**Violation of Fifth Amendment**
**Equal Protection / Due Process Clause**
**Violation of Fourteenth Amendment**
**Privileges and Immunities Rights**

174. Plaintiff incorporates by reference the foregoing allegations as if fully set forth in this paragraph.

175. DOS, LELD, DS, and CA revoked Plaintiff's Passport No. 218029753 per 22 CFR §51.62(a)(2), aided and abetted by CCC, without using the care that a reasonably prudent person is expected to exercise.

176. Under common law, individuals with special duties to society are held to a higher standard of care.

a) DOS has a special duty in regard to "the administration and the enforcement of . . . immigration and nationality laws." 8 U.S.C. §1104(a). Indeed, passport authority is centralized by Congress in DOS. (See Haig v. Agee, 453 U.S. 280, 294-99 (1981).)

b) Individuals held to a higher standard of care are required to proceed as a reasonably prudent person would act under a given set of circumstances. (See In Re: Estate Of Joseph Collins Lieberman, Nos. 2-07-0451, 2-07-0452 (2009), where the court held that violation

of the prudent-person standard "includes a range of conduct that encompasses negligent as well as willful conduct.")

c) 22 CFR §51.62(a) does <u>not</u> mandate revocation of a passport, but specifies only that Defendants <u>may</u> "revoke or limit a passport" when certain conditions are met.

d) DOS willfully chose not to exercise any discretionary authority in Plaintiff's case, but took the most extreme punitive action possible without exercising the certainty a prudent and reasonable party would apply in regard to 22 CFR §51.62(a)(2).

e) By failing to contact CCC Judge Pomrenze, the CCC notary, or even the NV Attorney responsible for the Name Change before revoking Plaintiff's passport (much less conducting any thorough investigation at all such as entering the Case No. in CCC's online records system), Defendants willfully, deliberately, and recklessly deprived Plaintiff of the due process to which he is entitled under both the Fifth and Fourteenth Amendments to the U.S. Constitution.

177. Under any passport revocation action, "The Constitution's due process guarantees call for . . . a prompt post-revocation hearing." (<u>Haig v. Agee</u>, 453 U.S. 282 (1981).)

a) DOS never held the post-revocation hearing within the 60-day statutory period specified per 22 CFR §51.70.

b) First, DOS induced Plaintiff to purchase a new passport while waiting for a post-revocation hearing, but then retrospectively used the 'new' passport to deprive Plaintiff of his due process right to said hearing after the fact.

c) Second, DOS compelled Plaintiff to file an FOIA request to obtain documents DOS chose to withheld, then used the delay in releasing documents to deprive Plaintiff of his rights to review evidence, call witnesses, and attend a 'prompt' post-revocation hearing, as well as to secure all possible remedies resulting from said hearing.

d) By promising a post-revocation hearing, and then withdrawing it for extralegal reasons months after the fact, Defendants deprived

Plaintiff of the due process to which he is entitled under both the Fifth and Fourteenth Amendments to the U.S. Constitution.

178. Under law, a passport is a travel document that is "the only means by which an American can lawfully leave the country or return to it." (See 8 U.S.C. § 1185(b) (1976 ed., Supp. IV).)

179. The right to travel "is a part of the `liberty' of which the citizen cannot be deprived without the due process of law under the Fifth Amendment." (See <u>Kent v. Dulles</u>, 357 U.S. 116, 125, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958).)

180. Under any passport revocation action, "The Constitution's due process guarantees call for . . . a statement of reasons." (<u>Haig v. Agee</u>, 453 U.S. 282 (1981).)

   a) In <u>Kelso v. US Dept. of State</u>, the court also observed that "It is the *reason for revocation*, not the bare act of revocation itself that may give rise to a claim of constitutional wrong." (See 13 F. Supp. 2d 1 (1998).)

   b) Neither of the two revocation reasons cited by Defendants had any basis in fact or law, thereby placing those spurious reasons for revocation squarely in the realm of <u>constitutional wrong</u>.

181. Plaintiff further alleges that the revocation process followed by DOS, LELD, DS, and CA displayed a pattern of behavior that was illegal, fraudulent, and in error.

   a) The above Defendants acted **illegally** because they imposed on Plaintiff a legal obligation to be responsible for clerical and administrative filings in a jurisdiction over which he had no control, and for which no statutory obligation was cited.

   b) Defendants **willfully** turned 22 CFR §51.62(a)(2) into a retroactive statute in imposing those extralegal duties on Plaintiff. (See <u>INS v. St. Cyr</u>, 533 U.S. 289, 320 (2001), where a statute has "retroactive effect when it . . . creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past.")

c) Defendants **conspired** to violate the Equal Protection Clause of the Fourteenth Amendment in imposing these extralegal duties on Plaintiff, and no one else. (See <u>Bolling v. Sharpe</u>, 347 U.S. 497 (1954), where the due process guarantee was extended from individual state governments to the Federal government.)

d) DOS actions were **fraudulent** because the document falsely claimed to be 'forged' or 'fraudulent' was authentic and easily found within one (1) hour of a search in CCC (as well as online), while its counterpart is now 'missing' in DOS files. Furthermore CCC has admitted that the information submitted by DOS, DS, and SSA OIG was incomplete and inaccurate, thereby interfering with CCC's ability to conduct a proper search for the record in question.

e) DOS actions were **erroneous** because once Plaintiff submitted a new DS-11 passport application, attaching as sole evidence the same 2005 Order For Change Of Name in DOS possession for more than eight years, a new Passport No. 505869857 was issued.

f) As Plaintiff provided no new evidence to Defendants, the original evidence submitted by Plaintiff on May 9, 2006, must be deemed legal, proper, and without error on his part.

182. If left unchecked, Defendants could search courthouses around the country and recklessly revoke passports when birth certificates are not found, marriage records go missing, divorce orders are not entered, or name changes are not recorded.

a) As nothing in 22 CFR §51.62(a)(2) gives Defendants that right, Defendants actions exceeded statutory authority and violated the privileges and immunities rights guaranteed Plaintiff by the Fourteenth amendment.

b) At the very least, Defendants should be sanctioned and held jointly and severally liable for exceeding constitutional limits. (See <u>National Treasury Employees Union v. United States Dep't of Treasury</u>, 838 F. Supp. 631, 640 (D.D.C.1993), where the court held that "the public may be deemed to have an overriding interest in

assuring that the government remains within the limit of its constitutional authority.")

183. As a direct and proximate result of Defendants' violations of Plaintiff's statutory and constitutional rights, Plaintiff has suffered severe and substantial damages as enumerated in paragraphs 159 and 173, in an amount to be determined by a jury and the Court.

184. Furthermore, by reason of the false or fraudulent claims, in which Defendants acted with oppression, fraud, and malice, Plaintiff is entitled to treble damages plus a civil penalty for each violation.

**FIFTH CAUSE OF ACTION**

**Violation of First Amendment**

**Freedom of Speech Rights**

**Common Law Fraud; Mail Fraud (18 U.S.C. §1341)**

**Obstruction of Justice by Destruction of Evidence (18 U.S.C. §1519)**

185. Plaintiff incorporates by reference the foregoing allegations as if fully set forth in this paragraph.

186. Plaintiff's right to petition, complain (and escalate) his government and elected officials for redress about unjust SSA policies and practices in its treatment of Roxanne Ciopei is speech protected by the First Amendment to the U.S. Constitution. (See De Jonge v. Oregon, 299 U.S. 353, 364 (1937)).

187. At all times, Plaintiff's concerns about SSA governmental abuses was speech of a private citizen on a matter of public concern.

188. In order to sustain a violation of §1985(3), as construed in Griffin v. Breckenridge, 403 U. S. 88, 102-103 (1971), Plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

a) Defendants DOS, LELD, DS, and CA negligently, intentionally and willfully conspired with Defendant SSA OIG to violate Plaintiff's right to free speech by first threatening Plaintiff with arrest if he continued his complaint; second, conducting an extralegal investigation not contemplated under law; and third, revoking Plaintiff's passport for frivolous and spurious reasons.

b) The joint SSA OIG/DS investigation conducted did not have any proper law enforcement basis (as Plaintiff never was accused or prosecuted for any crime, and EDVA declined prosecution and refused to bring any criminal charges against Plaintiff as of October 26, 2011), but designed to harass and injure Plaintiff.

c) Once Defendants could not find any lawful means to punish Plaintiff, they conspired to 'invent' evidence by wrongfully claiming Plaintiff had obtained Passport No. 218029753 through a forged and fraudulent court document (even though the document submitted was legitimate and properly on file with CCC and DOS) and then 'destroying' evidence by removing exculpatory documents from Plaintiff's DOS files.

d) Defendants injured Plaintiff by failing to hold the statutory post-revocation hearing to which Plaintiff was entitled within 60 days of request; blocking the release of evidence needed for such a hearing; inducing Plaintiff to file an FOIA request to obtain all evidence, while interfering with the FOIA process; secretly destroying Plaintiff's old passport before a hearing could be held; forcing Plaintiff to wait indefinitely overseas for a hearing, without the legal right to stay or leave, before acting to prevent any hearing from being held at all.

189. FOIA evidence released to date also clearly show DS/SSA OIG special agents actively engaging in fraud and contriving to induce DOS, LELD, DS, and CA to revoke Plaintiff's passport on the false grounds that it had been obtained by submission of a 'forged' or 'fraudulent' document when exculpatory evidence proving otherwise was already in Defendants' joint possession.

190. In their ongoing harassment against Plaintiff, Defendants DOS, LELD, DS, CA, and SSA OIG used the Postal Service to perpetuate their schemes in violation of 18 U.S.C. §1341 (Mail Fraud): "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining . . . property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, . . . shall be fined under this title or imprisoned not more than 20 years, or both."

191. Plaintiff's FOIA request also disclosed that the Order For Change Of Name Plaintiff filed with DOS in 2006 (and wrongfully alleged in 2011 as 'missing' in CCC) also was 'missing' from Plaintiff's DOS records, raising questions of a conspiracy by Defendants to deprive Plaintiff of his rights, liberty, and property.

192. When loss of Plaintiff's 2005 Order For Change Of Name was disclosed, DOS acted to stonewall an investigation and to block Plaintiff from uncovering the truth, in violation of U.S.C. §1519: "Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . shall be fined under this title, imprisoned not more than 20 years, or both."

193. Defendants acted intentionally and with callous disregard for Plaintiff's clearly established statutory and constitutional rights.

194. As a direct and proximate result of Defendants' violations of Plaintiff's statutory and constitutional rights, Plaintiff has suffered severe and substantial damages as enumerated in paragraphs 159 and 173, in an amount to be determined by a jury and the Court.

195. Furthermore, by reason of the false or fraudulent claims, in which Defendants acted with oppression, fraud, and malice, Plaintiff is entitled to treble damages plus a civil penalty for each violation.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff demands a judgment against these Defendants, and further relief as follows:

a) For a trial by jury on all issues so triable per Rule 38(b) of the Federal Rules of Civil Procedure;

b) For appropriate declaratory and injunctive relief regarding the unlawful and unconstitutional acts and practices of Defendants;

c) For summary judgment, per Rule 56 of the Federal Rules of Civil Procedure, that revocation of Plaintiff's passport was improper on the facts and a violation of applicable laws;

d) For damages by reason of the tortious conduct of Defendants in depriving and conspiring to deprive Plaintiff of constitutional and civil rights under color of law, both compensatory and punitive, in substantial amounts to be determined at trial;

e) For answers to all Federal Questions posed in paragraph 155;

f) For appropriate equitable relief against all Defendants, including the enjoining and permanent restraining of these violations, and direction to Defendants to take such affirmative action as necessary to ensure that the effects of the unconstitutional and unlawful passport revocation and destruction practices are eliminated and do not continue to affect Plaintiff's, or others', rights;

g) For an award of reasonable costs and attorney's fees, costs and disbursements on his behalf expended as to such Defendants pursuant to 50 U.S.C.§ 1810, 18 U.S.C.§ 2520, 18 U.S.C.§ 2707, and 28 U.S.C.§ 2412.

h) For any and all other relief to which Plaintiff may show himself to be justly entitled.

Dated this 20th day of July, 2018

*/s/ Jenifer Wicks*

JENIFER WICKS
DC Bar 465476
Law Offices of Jenifer Wicks
The Jenifer Building
400 7th Street NW Suite 202
Washington, DC 20004
Telephone 202-393-3004
Facsimile 202-478-0867
Email Jenifer@JWicksLaw.com