UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JEFFREY M. WILLETT**, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 18-cv-1707-(TSC) |
| **MICHAEL R. POMPEO**, *Personally and in his official capacity as Secretary, U.S. DEPARTMENT OF STATE, et al.*, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Plaintiff Jeffrey M. Willett has filed an objection, ECF No. 48, to the Motion to Withdraw filed by his attorney Jenifer Wicks of the Blind Justice Legal Services Corporation, ECF No. 41. Because the court granted Wicks' motion prior to receiving Willett's objection, the court will construe the objection as a motion to reconsider. For the reasons set forth below, the court will DENY Willett's motion.

I. BACKGROUND

Wicks brought this case on behalf of Willett, who resides in the Netherlands, and who alleges that State Department employees illegally revoked his U.S. passport in retaliation for his complaints about actions the Social Security Administration took with respect to a third party. ECF No. 1, Compl. §§ 1-2, 7, 30-52.

Wicks filed this action on July 20, 2018 but did not effectuate service of process within ninety days as required by Federal Rule of Civil Procedure 4(m). The court therefore entered an order directing her to show cause why the action should not be dismissed for failure to prosecute.

Page 1 of 14

10/24/18 Min. Order.  Wicks filed a timely response in which she asserted that she had served the Defendants but was awaiting confirmation of mailing.  ECF No. 4.  Shortly thereafter, Defendants entered an appearance.  ECF No. 6.  With Wicks' consent, on December 16, 2018, the court granted Defendants an extension of time to answer, making their answer due February 14, 2019.  12/16/18 Min. Order.  Defendants also sought and received (with Wicks' consent) two additional extensions of time.  2/12/19 Min. Order; 3/31/19 Min. Order.

Defendants filed a timely motion to dismiss all official capacity claims.  ECF No. 10.  After obtaining an extension, Wicks filed a timely opposition, and Defendants obtained an extension of their deadline, then filed a timely reply.  5/2/19 Min. Order; 6/27/19 Min. Order; ECF Nos. 13, 15.  The court denied Defendants' motion to dismiss without prejudice, but allowed Wicks until March 12, 2020 to file a motion to amend the Complaint as to the official capacity claims.  2/28/20 Min. Order.  Wicks subsequently sought two extensions of the deadline to file the motion to amend due to her workload, illness, computer problems, and Willett's illness.  ECF Nos. 22, 26.

Meanwhile, after several extensions, Defendants moved to dismiss all individual capacity claims.  ECF No. 28.  On May 31, 2020, Wicks filed an unopposed motion for an extension of deadlines on the grounds that she had suffered a stroke.  ECF No. 29.  The motion contained incomplete words, as well as words that were improperly strung together without appropriate spacing.  *See id*.  The court granted her request for an extension through July 31, 2020.  6/2/20 Min. Order.

Wicks filed another timely motion, seeking an extension through August 15.  ECF No. 30.  Not only did this motion contain incomplete words, it also contained groupings of letters that were

not words, sentences improperly strung together, repetitive paragraph numbering and unusual capitalization. *See id*. ("[T]he Court issued an order for the filing of an amended complaint.and then a schedulke fot briefing of s renewed motion to dismiss. . . . COUNSEL HAS CONSULTED WITH BOTH MRCOUNSEL AND NEITHER OPPOSE THIS REQUEST."). Rather than extend the deadline until a specified date, the court stayed the briefing deadlines pending further order of the court. 7/31/20 Min. Order. The court ordered Wicks to file a status report by August 28, 2020 and, if medically authorized to return to work, to attach a proposed order for moving forward with the case. *Id.*

Wicks filed a timely motion on August 15, asking the court to stay the case pending a medical release to return to work. ECF No. 32. The motion contained the same obvious errors as did the previous motions. *See id*. at ECF pp. 1-2. ("DJEFFREY WILLETT, by and through undersigned counsel, respectfully moves this Honorable Court pursuant to Federal Rules of Civil Procedure an, for stay in this matter pending counsel's return to work. In support of this motion the counsel states the following based on information and belief: (1) COUNSEL FOR MRSTHE PLAINTIFF JENIFFER WICKS HAD A STROKE ON APRIL1, 2020 AND WAS RELEASED HOME ON APRIL 24. SHE RETURNS FORRASSESSMENT IN the coming weeks TO DETERMINE WHEN SHE SILL RETURN TO WORK, WHICH AT THIS TIME IS PROJECTED TO BE fall 2020. . . . [C]ounsel requess that the court stay this matter pendinf receipt of status reports from counsel and vacate the Aust 15 2020 deadline for the amended complaint."). The proposed order was written in what appeared to be at least 22-point font. *See* ECF No. 32-1.

The court granted the motion and ordered Wicks to file monthly reports beginning October 1, 2020, and, once released to return to work, to attach a proposed order for moving forward with the case.  8/24/2020 Min. Order.  Wicks subsequently filed three identical timely status reports with unusual capitalization, but no apparent errors.  ECF Nos. 33–36.  None contained proposed orders as mandated by the court, but on November 27, 2020, Wicks filed an Amended Complaint containing 205 paragraphs, not including sub-paragraphs.  ECF No. 37.  While the Amended Complaint appeared to add allegations (the original Complaint contained 195 paragraphs, not including sub-paragraphs), the track changes feature in the document only showed format changes, not textual changes.  *Compare* ECF No. 37 with ECF No. 1.  Several days later, Wicks filed a motion to strike the Amended Complaint, explaining that she had returned to work part-time but had lost edits she saved to the document.  ECF No. 38.  The motion contained errors such as those contained in the prior motions and the proposed order appeared to be in at least 22-point font.  *See id.* ("Counsel is back to work on a psrt time basis . . . [C]ounasks that ECF filing 37 be struck.").

The court granted the motion, struck the Amended Complaint, and directed the parties to meet, confer, and file a joint status report and proposed order for moving forward.  12/29/20 Min. Order.  Defense counsel filed a timely joint report, ECF No. 39.  On January 15, 2021, the court adopted the parties' proposed briefing schedule, which required a proposed amended complaint on the official-capacity claims by March 31, 2021 and any response to the motion to dismiss the individual-capacity claims by April 16, 2021.  1/15/21 Min. Order.  The court had previously required that Wicks file a "red-lined" version of the Amended Complaint.  *See* 2/28/20 Min. Order.

The timely Amended Complaint contained 205 paragraphs, ECF No. 40, but while Wicks' ECF docket entry stated that she had filed a "redlined" version as an exhibit, the exhibit did not contain "red-lining" or any other notations showing the changes from the prior version to the amended version of the document.  ECF No. 40-1.

The following day, March 31, 2021, without leave of court, Wicks attempted to file another Amended Complaint four times before one was accepted by the Clerk's office—the first three had been improperly docketed.  ECF Nos. 43–46.  She attached a "red-lined" version.  ECF No. 46-1.

That same day, Wicks filed what appear to be two identical motions to withdraw.  ECF Nos. 41–42.  She explained that an attorney in the Netherlands had retained her to represent Willett, but the "funds provided by Mr. Willet's former attorney" had been depleted and no further funds had been forthcoming.  ECF No. 41 ¶ 1.  Wicks stated that she had attempted to secure "additional counsel" to assist her given her "limited capacity," and she believed she had located someone, but she had been unable to retain another attorney because Willett had not provided additional funding.  *Id*. ¶ 2.  She also indicated that she had been medically cleared to work 24-30 hours per week but was already working at capacity for Blind Justice Legal Services.  *Id*. at 1 n.1.  Finally, Wicks certified that she had sent a copy of her motion to the last known email address for Willett and that she had asked him for a mailing address, but he had not provided one.  *Id*. at 2.  She further certified that she advised Willett that if he intended to object to the motion he must notify the Clerk of the Court within five days of service of the motion.  *Id*.  The motion did not contain any obvious errors.

Although the Local Civil Rule in place at the time of Wicks' motion provided seven days for clients to object to withdrawal motions, LCvR 83.6(c), the court inadvertently granted the motion the following day, April 1, 2021, "in light of Wicks' medical restrictions." ECF No. 47. The court further ordered Willett to provide the court, by May 31, 2021, his address and telephone number as required by the court's local rules. *Id*. at 1 (citing LCvR 5.1(c)(1)). The court directed the Clerk of the Court to serve Willett at the email address Wicks had provided. *Id*. at 2.

Willett's "response" is the pleading currently at issue. ECF No. 48, Pls. Response. He first argues that Wicks' motion to withdraw was improper because she forwarded it to him via email in contravention of the court's local rules, which provide for service via "paper form" on parties who do not have CM/ECF passwords. *Id*. ¶¶ 3-10 (citing LCvR 5.4(d)(1); 5.4(e)(2); 5.4.(d)(2); Fed. R. Civ. P. 5(b)(2)(C); (b)(E)). He also objects because the motion did not contain a "statement of specific points of law and authority," as well as a statement of facts as required by Local Civil Rule 7(a). Pls. Response ¶ 11.

Willett further alleges that Wicks incorrectly stated in her motion that he had five days in which to object and the court, in turn, granted the motion before the expiration of the required seven-day objection window, preventing him from responding to the motion.[1] Pls. Response ¶¶ 14, 17. He also points out that the court allowed Wicks to withdraw "in light of Wicks' medical restrictions," without requiring Wicks to submit supporting evidence, and despite the fact that she continued to work on other cases. *Id*. ¶¶ 30-31, 51-53.

---

[1] It is unclear when the change occurred, but the rule previously provided for a five-day window. *See Byrd v. District of Columbia*, 271 F. Supp. 2d 174, 175-76 (D.D.C. 2003).

Willett claims Wicks never informed him that she was experiencing medical limitations and that she attempted to extort money from him by sending him a new retainer agreement and threatening to withdraw if he failed to sign the agreement. *Id*. ¶¶ 35-46, 53, 55. He also alleges that she never provided him an accounting despite originally agreeing to bill him for services rendered, and thus she has not established that his account was depleted. *Id*. ¶ 55. Willett claims Wicks failed to communicate with him sufficiently during this litigation, including during her illness, and that he is prejudiced by her withdrawal because this litigation has been ongoing for many years. *Id*. ¶¶ 35-37, 47. Accordingly, he argues the court's order allowing Wicks to withdraw is void pursuant to Federal Rules of Civil Procedure 60(b)(3) and 60(d)(3). *Id*. ¶¶ 63–64. He states that he does not wish to represent himself *pro se*, and that he has unsuccessfully attempted to secure replacement counsel, but questions his ability to find replacement counsel on "short notice." *Id*. ¶ 65. He asks the court to vacate its order allowing Wicks to Withdraw.

## II.     ANALYSIS

### A. Alleged Lack of Evidentiary Support for Illness

Willett's argument that Wicks should not have been permitted to withdraw without supporting evidence of her medical condition and while she continued to work on other cases is unavailing.

The evidence of Wicks' medical limitations appears in the record. The numerous errors in her pleadings, with improperly strung together sentences lacking proper grammar, spelling and spacing, and the duplicative nature of her filings were sufficient to establish that her medical condition had severely limited her ability to practice. And to the extent she has been cleared to resume practicing with restrictions on her hours, it is not unusual or improper that she has elected

to withdraw from representation in a case in which she contends she is no longer being compensated.

**B.  Compliance with Local Rule 83.6**

Local Rule 83.6 provides that "if a party's written consent is not obtained . . . an attorney may withdraw an appearance for a party only by order of the Court upon motion by the attorney served upon all parties to the case."  LCvR 83.6(c).  The motion "shall be accompanied by a certificate of service listing the party's last known address, unless such address does not appear on the public docket, and stating that the attorney has served upon the party a copy of the motion and a notice advising the party to obtain other counsel."  *Id.*  The district court has the discretion to grant or deny such a motion.  *Byrd v. D.C.*, 271 F. Supp. 2d 174, 176 (D.D.C. 2003) (citation omitted).

The court may deny a motion to withdraw if "the withdrawal would unduly delay trial of the case, or be unfairly prejudicial to any party, or otherwise not be in the interest of justice."  LCvR 83.6(d).  "In reaching its ruling, the court also may consider factors such as the length of time the case and dispositive motions have been pending, the time it would take for the unrepresented party to search for and secure new legal representation, and the degree of financial burden that counsel would suffer if the court required [her] to remain in the case."  *Byrd*, 271 F. Supp. 2d at 176 (citation omitted).  Moreover, a court may consider whether the relationship between the attorney and client has deteriorated beyond repair.  *See Hudson v. Am. Fed'n of Gov't Emps.*, 391 F. Supp. 3d 71, 74 (D.D.C. 2019).

1. Certificate of Service

Willett argues that Wicks' motion was improper because it did not comply with Local Rule 83.6, which generally requires that motions to withdraw include a "certificate of service with the party's last known address." LCvR 83.6(c). Wicks filed a certificate of service using Willett's email address, not a physical mailing address.

Local Rule 83.6(c) requires use of the last known address, except where the address does not appear on the public docket. *Id.* Here, the Complaint did not contain Willett's address, nor did it appear on the public docket at that juncture. Wicks explained that she served the motion on Willett via email because Willett had not provided her with a mailing address. ECF No. 41 at 2. Accordingly, the court finds that Wicks' service of Willett via email did not violate the service requirements in Local Rule 83.6(c).

2. Seven-day objection window

Willett alleges that Wicks incorrectly stated in her motion that he had five days in which to object, and the court, in turn, improperly granted the motion before the actual seven-day objection window mandated in Rule 83.6 had expired. Pls. Response ¶¶ 13, 17. As noted above, the court, conceding that it granted Wicks' motion before the objection window had closed, will construe Willett's objection as a motion to reconsider and therefore Willett's rights will not be adversely affected by Wicks' incorrect statement regarding a five-day window, nor the court's premature order granting the motion.

3. Undue delay and unfair prejudice.

Willett appears to argue that because this litigation has been pending since 2018, Wicks' withdrawal has caused him both "undue delay" and "unfair prejudice." Pls. Response ¶ 47. He

provides no further explanation regarding the purported prejudice, but asserts that he does not wish to represent himself *pro se* and that he questions his ability to find replacement counsel on "short notice." *Id*. ¶ 65.

The court finds that Willett has not suffered undue delay or unfair prejudice by Wicks' withdrawal from the case. Although a court may deny a motion if "withdrawal would unduly delay trial" of the case, no undue delay exists here because this case is still in its "infancy[,] [d]iscovery has not commenced, [and] trial has not been scheduled." *Honda Power Equip. Mfg., Inc. v. Woodhouse*, 219 F.R.D. 2, 6 (D.D.C. 2003). Although motions to dismiss remain outstanding, the delay has been primarily caused by Wicks' requests for extensions both before and after her illness. And, more importantly, this court stayed briefing on those motions, so her withdrawal has not negatively impacted pending deadlines.

A client is not unfairly prejudiced when he simply needs to expend "time, effort, and funding" to find replacement counsel, as these "are burdens facing every litigant." *See Banneker Ventures, LLC v. Graham*, No. 13-391 (RMC), 2016 WL 1304834, at *3 (D.D.C. Mar. 31, 2016). And Willett has had sufficient time since he filed his objection to attempt finding replacement counsel.

This is not a case like *Byrd v. District of Columbia*, 271 F. Supp. 2d 174, in which the court denied a motion to withdraw because, *inter alia*, a settlement conference was scheduled in two weeks, and discovery was closing in a month. Nor is this akin to *Barton v. District of Columbia,* 209 F.R.D. 274, 277-78 (D.D.C. 2002), in which the court allowed counsel to withdraw upon condition that they respond to a dispositive motion in a case involving "document-intensive, somewhat complicated, land-use" issues. *See also Banneker*, 2016 WL 1304834, at *3

(granting motion to withdraw and noting that plaintiff was "not losing the only group of lawyers who are, or could become, knowledgeable about the underlying disputes or someone of special expertise in an odd corner of the law").

### C.  Lack of Accounting and Lack of Communication with Client

Willett also challenges Wicks' withdrawal because she purportedly failed to provide him with an accounting for her services, despite originally agreeing to bill him, and thus has not established that his account was depleted. Pls. Response ¶ 55. Willett further claims that Wicks attempted to extort money from him by sending him a new retainer agreement and threatening to withdraw if he failed to sign the agreement. *Id.*

On July 14, 2022 the court ordered Wicks to file an affidavit (either on the public docket or under seal) supporting her assertion that the retainer has been depleted. 7/14/22 Min. Order. Wicks did not respond and has not sought an extension of the deadline.

While the court is concerned about Wicks' failure to comply with its order, her failure to respond does not change the outcome of the representation issue currently before this court. First, there is nothing unusual about an attorney asking a client to sign a new retainer agreement to ensure payment going forward. *See Honda Power Equip. Mfg., Inc.*, 219 F.R.D. at 6 (noting that an attorney "should not be in a position where he or she has not been paid, and yet must continue to work for the client at his or her own expense."). But even if the retainer has not been depleted, payment conflicts are only one of a number of factors a court might consider when ruling on a motion to withdraw. *See Byrd*, 271 F. Supp. 2d at 176 (noting that the court should consider, *inter alia*, whether withdrawal will have a "disruptive impact . . . on the prosecution of the case"). And to the extent a client challenges an attorney's billing practices, records, or lack thereof, he may

seek relief through the District of Columbia Bar, which has jurisdiction to review complaints that an attorney has failed to account for client funds. D.C. Bar R. XI § 1 ("[M]embers of the District of Columbia Bar . . . are subject to the disciplinary jurisdiction of [the District of Columbia Court of Appeals] and its Board on Professional Responsibility."); D.C. Bar R. X ("The District of Columbia Rules of Professional Conduct . . . shall provide the standards governing the practice of law in the District of Columbia"); D.C. R. Prof. Conduct 1.16(d) ("In connection with any termination of representation, a lawyer shall take timely steps to the extent reasonably practicable to protect a client's interests, such as . . . refunding any advance payment of fee or expense that has not been earned or incurred.").

Willett further complains that Wicks failed to communicate with him sufficiently during this litigation, including during both their illnesses. Pls. Response ¶¶ 35-46, 53, 55. This complaint is also one over which the District of Columbia Bar has jurisdiction to investigate. *In re Ekekwe-Kauffman*, 210 A.3d 775, 789 (D.C. 2019) (noting that while "an attorney need not communicate with a client as often as the client would like," the rules of Professional Conduct require attorneys to fulfill "reasonable client expectations for information") (cleaned up and citations omitted).

While these complaints are not for this court to resolve, they do provide yet more of a basis for this court's decision to allow Wicks to withdraw, as it is clear that the two have reached a point where the attorney-client relationship is irretrievably broken. *See Laster v. District of Columbia*, 460 F. Supp. 2d 111, 112 (D.D.C. 2006) (granting attorney's motion to withdraw based on "irretrievably broken" client relationship); *Partridge v. Am. Hosp. Mgmt. Co.*, 289 F. Supp. 3d

1, 24 (D.D.C. 2017) (permitting withdrawal based on attorney's "deteriorating relationship" with clients).

### D. Compliance with Local Rule 7(a)

Willett argues that Wicks' motion was improper because it did not comply with Local Rule 7(a), which requires that all motions "include or be accompanied by a statement of the specific points of law and authority that support the motion, including where appropriate a concise statement of facts." LCvR 7(a). The court disagrees, finding that Wicks' motion, which sets forth the factual basis for her request to withdraw, along with a citation to the appropriate local rule, is sufficient.[2]

### E. Federal Rules of Civil Procedure 60(b)(3) and 60(d)(3)

Finally, Willett seeks relief from the court's order permitting Wicks to withdraw pursuant to Federal Rules of Civil Procedure 60(b)(3) and 60(d)(3) because of Wicks' alleged "fraud" in making "deliberate misrepresentations intended to secure a quick withdrawal through dishonesty, fraud, and deceit." Pls. Response ¶¶ 55, 63-64. Willett is not entitled to relief under either of these rules.

Rule 60(b)(3) allows a court to set aside or grant relief from a final judgment for "fraud, . . . misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). The court is unaware of legal authority indicating that a movant's attorney falls within the definition of "an opposing party," and the court's order was not a final judgment.

---

[2] Willett also raises other objections regarding Wicks' alleged violation of the local rules, such as her purported failure to notify the court that her physical address had changed and her failure to confer with the Defendants prior to filing her motion. *See e.g.,* Pls. Response ¶¶ 18-19. None of these alleged violations negatively impacted Willett's rights.

Rule 60(d)(3) also provides that a court may "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3). "Fraud on the court . . . is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury." *Baltia Air Lines, Inc. v. Transaction Mgmt., Inc.*, 98 F.3d 640, 642 (D.C. Cir. 1996) (citations omitted). "Examples include the bribery of a judge or the knowing participation of an attorney in the presentation of perjured testimony." *Id.* at 643 (citation omitted). A party alleging fraud upon the court must present "clear and convincing evidence." *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1477 (D.C. Cir. 1995) (citations omitted). Willett has not met this standard, and, assuming he had, such fraud would be an even more compelling reason to allow Wicks to withdraw.

### III.    CONCLUSION

For the reasons set forth above, the court will DENY Willett's request for relief from the court's order allowing his former attorney to withdraw, ECF No. 48.

Date:  October 25, 2022

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge